# IN THE UNITED STATES DISTR ICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRONE PETERSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-91** |
| | : | |
| **WARDEN DAVID BYRNE,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**BAYLSON, J.**                                                                 **JUNE  17, 2020**

Plaintiff Tyrone Peterson, a convicted prisoner incarcerated at SCI-Laurel Highlands, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, based upon the conditions of his confinement.  (ECF No. 2.)  He has also filed a Motion for Leave to Proceed *In Forma Pauperis* and a Prisoner Trust Fund Account Statement.[1]  (ECF Nos. 1, 11.)  For the following reasons, the Court will grant Peterson leave to proceed *in forma pauperis*, dismiss his Complaint, and grant him leave to file an amended complaint.

---

[1] In response to the Court's Order denying without prejudice his motion for leave to proceed *in forma pauperis* for failure to provide a certified inmate account statement (ECF No. 10), Peterson provided a letter (ECF No. 11.)  Attached thereto is a statement by L. Bisick, identified as a fiscal tech at SCI-Laurel Highlands, where Peterson is currently incarcerated.  Bisick states that Peterson has been housed at his current location since December 30, 2019, and attaches to his statement Peterson's monthly account statement, which reflects that, since July 14, 2019, Peterson has been housed at SCI-Waymart, SCI-Phoenix, and SCI-Laurel Highlands, and has carried a negative balance in his inmate account throughout.  (ECF No. 11-1.)  The Prison Litigation Reform Act requires a prisoner seeking leave to proceed *in forma pauperis* to submit with his request a certified copy of his inmate account statement for the six-month period immediately preceding the filing of his complaint.  28 U.S.C.A. § 1915(a)(2).  The Court deems the account statement submitted by Peterson to be in substantial compliance with the statute.

## I.     FACTUAL ALLEGATIONS[2]

Peterson is currently housed at SCI-Laurel Highlands, but the events giving rise to his claims are alleged to have occurred at the George W. Hill Correctional Facility ("GWH"). Peterson names six Defendants in his Complaint, all associated with GWH: Warden David Byrne, Deputy Warden Lee Tatum, Seargant Conolly, Dr. Ronald Phillips, Corrections Officer Rasheed, and Nursing Director Mariel Trimble.  (ECF No. 2 at 1-2.)[3]  Peterson sues the Defendants in their individual and official capacities.  His claims are based on injuries he sustained when he fell leaving his top bunk without benefit of a ladder, the medical care he subsequently received, and his inability to obtain assignment to a bottom bunk.

The gravamen of Peterson's claim is that prisoners are not provided with ladders to top bunks, requiring them to jump or use unstable metal storage bins a substitute ladders when accessing or leaving top bunks.  This, he claims, presents a grave risk of harm and constitutes a violation of his Eighth Amendment rights.  (*Id.* at 4.)

According to the Complaint, on August 29, 2019 at approximately 6 p.m., Peterson fell getting off his top bunk when the storage bin he was using as a makeshift ladder came off its tracks.  Peterson hit his head, sustained a cut over his eye, and injured his left foot, right rib cage, right shoulder, knee, elbow, hand, fingers, and lower back.  (*Id.* at 9.)  Peterson alleges that he had previously told Defendant Rasheed that the storage bin felt unstable, but no repair or remedy was offered.  (*Id.*)  Peterson also alleges that Defendant Connolly was on duty when he fell, and that Connolly was aware of the danger posed by the lack of ladders to top bunks.  (*Id.* at 7.)

---

[2] The facts set forth in this Memorandum are taken from Peterson's Complaint.

[3] The Court adopts the pagination assigned by the CM-ECF docketing system.

Peterson alleges that Defendant Tatum, too, was aware of the risk posed by the absence of ladders. (*Id.* at 4.)

Following his fall, Peterson sought medical treatment over a lengthy period, from the date of his fall through the end of December 2019. He also sought to obtain bottom-bunk status. His efforts are reflected in his Complaint in lengthy journal-style entries. These include descriptions of the medical care he received, which included x-rays, aspirin, muscle rubs and exercises prescribed by a physical therapist. Notwithstanding this care, Peterson alleges that Defendants Dr. Phillips and Nurse Trimble were deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. (*Id.* at 11-26.). Peterson's efforts, through the grievance process, to obtain bottom-bunk status, were unsuccessful.

Peterson also includes a claim that there existed at GWH a custom or practice of guards not answering prisoner call bells promptly, in violation of the prisoners' Eighth Amendment rights. (*Id.* at 5.)

Peterson claims that, notwithstanding the medical care he received, he continues to suffer pain and swelling in the injured areas, and that he has been told by his physical therapist that it could take up to a year for the injuries to resolve. As relief, he seeks installation of ladders to top bunks, and installation of safety rails, cameras, and two-way call buttons. Peterson has been unable to obtain a bottom bunk, and he demands that the selection process for bottom-bunk status be overhauled. He demands recovery of compensatory and punitive damages from each Defendant. (*Id.* at 30-32.)

## II.   STANDARD OF REVIEW

The Court will grant Peterson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Peterson is proceeding *pro se*, the Court must construe his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A.  Official Capacity Claims

Claims against GWH officials named in their official capacity are indistinguishable from claims against Delaware County.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)

---

[4] However, as Peterson is a prisoner, he must pay the filing fee in installments in accordance with 28 U.S.C. § 1915(b).

("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  That is because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166.  In other words, Peterson's's official capacity claims are effectively claims against Delaware County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

Alternatively, a plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 f.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers

know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Peterson does not allege that the failure to provide ladders to top bunks is a policy or custom. Even if he did, this would not provide a plausible basis for liability. *See infra*, Section III., B. Peterson does allege that it is the custom and practice of correctional officers at GWH to respond slowly to prisoner call bells, but he does not connect this behavior to the injuries he sustained. The Court will therefore dismiss with prejudice Peterson's claims against the Defendants in their official capacities as not plausible. Peterson's claims against the Defendants in their individual capacities are addressed below.

**B.      Claims Based on Absence of Ladders for Top Bunks**

Peterson purports to state an Eighth Amendment claim based on the absence of ladders for top bunks at GWH, and correctional officers' slow response to prisoner call bells. The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See*

*Wilson v. Seiter*, 501 U.S. 295, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

### 1.    Absence of Ladders for Top Bunks

To the extent Peterson is raising a claim based on the absence of ladders to ascend and descend from top bunks at GWH, his claim is not plausible.  Courts faced with similar claims have held that the absence of a ladder or other safety mechanism for the top bunk in a prison cell at most suggests negligence and does not give rise to a constitutional claim.  *Tindell v. City of Philadelphia*, Civ. A. No. 17-907, 2017 WL 3028598, at *2 (E D. Pa. July 14, 2017) (citations omitted).  Because this claim is not plausible, it will be dismissed with prejudice.

### 2.    Slow Response to Call Bell

Peterson alleges that, with the knowledge of Warden Byrne, the correction officers at GWH have developed a custom of responding slowly to prisoner call buttons.  He also alleges specifically that, following his fall, Corrections Officer Clark (who is not a named Defendant) was slow to answer the call button.  (ECF No. 2 at 12.)  As pled, these bare allegations do not state a plausible Eighth Amendment claim.  Because the Court cannot state that Peterson will not be able to state a plausible claim, he will be permitted to amend this claim.

### C.    Claims Based on Failure to Address Peterson's Serious Medical Needs

Peterson claims both that he was deprived of adequate medical care following his fall and that he has been denied bottom bunk status, in violation of his Eighth Amendment rights.  To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[5]  *See Farmer*, 511 U.S. at 835.  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d

---

[5] Because Peterson was a convicted prisoner at the time of the events in question, the Eighth Amendment governs his claims.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.  *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

Cir. 1991).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, No. 19-1684 (3d Cir. Apr. 27, 2020, slip op. at 13 (holding that attaching documents to grievance form is insufficient under *Rode* to show personal direction or actual knowledge by recipient of underlying facts)).

### 1.    Deliberate Indifference to Serious Medical Need

According to the Complaint, Defendants Dr. Phillips and Nurse Trimble failed to provide adequate medical care to Peterson following his fall.  The allegations, however, are sparse. Peterson relates that at a late October 2019 visit with Phillips, the doctor did not examine Peterson's lingering injuries, but recommended physical therapy.  (ECF No. 2 at 8.)  At a later visit, Phillips examined Peterson and advised him that it would take a year for his injuries to resolve and recommended further physical therapy.  (*Id.* at 21.)  As to Defendant Trimble, Peterson concedes that immediately following his fall, he was seen by the nurse, who provided Advil.  (*Id.* at 12.)  There are no other allegations of denial of medical care.  To the contrary, the Complaint details that Peterson received x-rays, aspirin, Advil, muscle rubs, and physical therapy in the months following his fall.  (*Id.* at 11-26.)  The allegations in the Complaint are insufficient to state a plausible claim for deliberate indifference to Peterson's serious medical needs following his fall.  The claim, accordingly, will be dismissed.

### 2.    Denial of Bottom Bunk Status

"'Courts have found that it can be an Eighth Amendment violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately

indifferent to that need.'" *Saunders v. GEO Grp., Inc.*, Civ. A. No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quoting *Whitehead v. Wetzel*, Civ. A. No. 14-51, 2016 WL 356809, at *7 (W.D. Pa. June 2, 2016); *Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (reversing grant of summary judgment where disputed issue of material fact existed from which a rational factfinder could conclude that prison doctor recklessly disregarded prisoner's need for a lower-bunk assignment or denied the lower-bunk assignment for non-medical reasons)); *see also Guilfoil v. Pierce*, Civ. A. No. 06-493, 2009 WL 688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious.").

According to the Complaint, Peterson requested bottom bunk status, but this was denied by Defendant Trimble, who advised Peterson that he did not meet the criteria.  (ECF No. 2 at 11.)  Peterson relates that he utilized the grievance process to obtain bottom bunk status, to no avail.  In order to state a plausible claim based on the failure to grant him bottom bunk status, Peterson would be required to allege that the staff members responsible for denying this status did so with deliberate indifference to a serious medical need that would compel assignment to a bottom bunk.  Peterson does not identify a serious medical need requiring bottom bunk status in his Complaint.  He relates that he is 5 feet 3 inches tall, and 51 years old, but does not explain how his age and stature constitute serious medical needs requiring special bunk assignment.  He, therefore, has not stated a plausible claim for denial of bottom bunk status.  (*Id.* at 11.)  Because the Court cannot say with certainty that he will not be able to state a plausible claim for denial of bottom bunk status, he will be permitted to amend this claim.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will grant Peterson leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.   The Court will dismiss with prejudice Peterson's official capacity claims against these Defendants, his claim based on the absence of ladders for top bunks at GWH, and his claim based on inadequate medical care following his fall, because amendment of those claims would be futile.   Peterson will be permitted to file an amended complaint challenging the alleged slow response to prisoner call bells, and the failure to grant him bottom bunk status.   *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).   An appropriate Order follows.


**BY THE COURT:**

**s/ Michael M. Baylson**
_____

**MICHAEL M. BAYLSON, J.**